COQUARD *v.* PEARCE.

Opinion delivered April 14, 1900.

MARRIED WOMEN—SEPARATE PROPERTY—SCHEDULE.—Gould's Digest, ch. 111, § 7, which provides that, "before any married woman shall be entitled to the privileges and benefits of the provisions of this chapter, she shall cause to be filed in the recorder's office, in the county where she lives, a schedule of the property derived through her, and no property belonging to any married woman shall be exempt from the payment of any debts contracted by her husband previous to the filing of the schedule aforesaid," did not enlarge the common-law estate of the husband in the wife's separate property in case she failed to file a schedule, and an execution sale of the husband's interest in a deceased wife's unscheduled land could not convey more than an estate for his life. (Page 97.)

Appeal from Benton Circuit Court in Chancery.

*O. W. Watkins*, Special Judge.

STATEMENT BY THE COURT.

We adopt appellee's statement of facts, it being correct. It is as follows:

"Appellant Coquard brought his suit by ejectment against the appellees to recover from them the lands mentioned in appellant's complaint. Both parties claim to have derived their title from Nancy A. Pearce, and an abstract of the facts, showing how these adverse claims originated, follows: On and long prior to the 24th day of March, 1869, John Smith owned all the lands in controversy, and on that day, for a valuable consideration, sold and conveyed to Nancy A. Pearce, by a proper deed, said lands, in which the grantor, Smith, reserved to himself and wife for the period of their lives the absolute control and dominion over the lands embraced in the deed, and a portion of the rents thereof. Some ten days after the execution and delivery of the deed to Nancy A. Pearce, wife of N. B. Pearce, she caused the same to be duly recorded in the office of the recorder of Benton county. In December, 1873, nearly five years after the execution of the deed above referred to, the grantors therein, Smith and wife, executed and delivered to Nancy A. Pearce a second deed, by which they conveyed to her all the rights in the land reserved to themselves in the former deed. This last deed was duly recorded in the office of the recorder of Benton county on the 5th day of January, 1874.

"The effect of the two deeds was to vest in Nancy A. Pearce the present absolute fee simple title to the lands, and she thereupon (December, 1873) entered into the exclusive occupancy of the same, and continued to occupy, control and claim the same as her sole and separate property and estate until the time of her death, which occurred in the year 1885. Mrs. Pearce died in Benton county, Arkansas, intestate, leaving her surviving her husband, N. B. Pearce, and the appellee, Bart Pearce, and several other children, as her sole heirs at law. N. B. Pearce died in the year 1893. From the death of his wife to the time of his own death N. B. Pearce occupied the lands as tenant by the curtesy. After the death of N. B. Pearce the children and heirs at law of Mrs. Nancy A. Pearce continued in the occupancy of the lands, claiming to be the owners thereof by inheritance, until the appellee acquired by purchase for fair value from them the shares and interests of his brothers and sisters in the lands. After which appellee

continued in the exclusive possession of the lands, claiming to be the sole owner thereof, and now occupies and claims the same.

"In the years 1870–1–2 John Smith and N. B. Pearce were engaged in the mercantile business as partners, and in those years, 1870–1–2, contracted and incurred a liability of some $1,200. On the 5th day of June, 1873, the account of $1,200 was settled by the firm of Smith & Pearce executing and delivering to the creditors the firm's note. On the 12th day of May, 1874, this note was merged into a judgment in the Benton circuit court against said firm. After the rendition of the judgment no execution or other proceeding was had thereunder or thereon until the 14th day of May, 1884, ten years and two days after the date of rendition, when execution was issued on the judgment, and this execution at a subsequent period was quashed by the Benton circuit court. After suing out the execution on the 14th day of May, 1884, no further proceedings were had on or under the judgment until the 24th day of November, 1884, when the judgment was revived as to N. B. Pearce only. On the 9th day of August, 1886, an execution was issued on this revived judgment, and under this execution the sheriff on the 6th day of October, 1886, exposed for sale, and did sell, all the right and title of N. B. Pearce in said lands, except his estate by the curtesy; the wife of Pearce having failed to file a schedule of the same. On the 11th day of April, 1888, the sheriff, in pursuance of the sale made in October, 1886, executed and delivered to appellant, as purchaser of the lands at such sale, the deed upon which he relies for his title. In his pleadings the appellant claims to be the owner of the lands, and at the trial offered in evidence in support of his title the sheriff's deed mentioned only.

"In his pleadings appellee denies appellant's claim of ownership of the land, or any part thereof, and sets up title in himself, and he further pleads the staleness of appellant's claim; that the same is barred by the statute of limitations; that appellee and his immediate vendors had occupied the lands, claiming to be the owners thereof, since the year 1873 to the present time. He denies that the indebtedness of the

firm of Smith & Pearce, or any part thereof, was incurred or contracted by their creditors upon the faith of the lands in controversy, or that any credit whatever was extended to the firm of Smith & Pearce on account of the lands; that the long period of occupancy and claim of ownership by appellee and his immediate grantors was with the full knowledge and acquiescence of appellant.

"Appellee also demurred to the complaint for insufficient facts to constitute a cause of action against him, and excepted to the introduction of appellant's deeds as evidence in the same. The defendant recovered judgment."

*E. P. Watson*, for appellant.

The right of the creditors of Pearce to subject the property of his wife to the payment of his debt was governed by the law in force at the time the debt was contracted, and the change from an account stated to a note did not change this right. 45 Ark. 376–384; 36 Ark. 108; 40 Ark. 427; 45 Ark. 108. For the law in force at that time as to the manner in which a wife should claim property as exempt from the husband's debt, see Gould's Dig., chap. 111; 30 Ark. 79; *ib.* 124, 127; 33 Ark. 618; 37 Ark. 17. Mrs. Pearce's property was not exempt from her husband's debts, because she failed to file her schedule as required by §§ 1–8, chap. 111, Gould's Digest. As to what is a compliance, see 14 Ark. 339; 19 Ark. 344; 22 *ib.* 429; 42 *ib.* 359; 30 *ib.* 127; 33 *ib.* 618. The mere filing of the deed for record was not a compliance. 19 Ark. 339; 37 Ark. 22; 38 Ark. 96. So far as creditors were concerned, in March, 1869, married women could hold property only under the provision of secs. 1, 7 and 8, chap. 111, Gould's Digest. They took a "separate statutory estate" which is distinguishable from the "separate estate" in equity. 1 Bish. Mar. Wom. § 796; 2 *id.* § 50–3. The husband had his estate by curtesy, and this estate was subject to his debts; and if she permits him to use and deal with the property as his own, it all becomes liable to his creditors for his debts. 50 Ark. 42. The law in force at the time the debt was contracted governs this case. 40 Ark. 427; 4 Wall. 535; 13 Wall. 646; 122 U. S. 284, 300.

*J. A. Rice*, for appellees.

As the husband did not have the fee simple, the sale of it passed nothing. The purchaser of a husband's interest in his wife's real estate takes only the rents and profits of the lands. Tyler, Inf. & Cov. 393–4–5. At common law the estate by the curtesy was the only estate the husband had in his deceased wife's realty. 9 Am. & Eng. Enc. Law, 841; 39 Ark. 432. The judgment, not having been revived within ten years, is barred. Sand. & H. Dig., §§ 4208, 4221, 4831. No execution can, therefore, be issued thereon. *Ib.* § 3036. When one of the plaintiffs in execution is dead, the execution must be sued out in the name of the survivor, for the benefit of himself and the representatives of the deceased plaintiff (Sand. & H. Dig., § 4217); or ·by both the survivor and the representatives, jointly. *Ib.* §§ 4217–19. The property was not subject to the husband's debts. Act April 28, 1873. The sheriff's deed is not properly in evidence. Sand. & H. Dig., § 3124.

BATTLE, J., (after stating the facts.) The greatest estate which N. B. Pearce could have acquired, by virtue of the relation of husband and wife, in the land in controversy was an estate for and during the term of his natural life. The fact that his wife acquired the lands by purchase during coverture did not increase that estate; neither did her failure to file a schedule have that effect. Chapter 111, of Gould's Digest, which is relied upon by appellant, in no case imposed such a penalty upon a married woman for such a failure. The object of these statutes was to increase her rights by the filing of the schedule, and at the same time protect the rights of her husband's creditors.

Pearce's creditors could not sell under execution any greater interest in his wife's lands than he had. When he died, his interest expired with him.

Judgment affirmed.